OPINION OF THE COURT
Eileen N. Nadelson, J.
This decision expands and explains the court’s oral order rendered in open court on March 17, 2006.
*254 Defendant was charged under Penal Law §§ 145.00 and 240.20 for allegedly damaging the front glass window of a pharmacy. At arraignment, bail was set at $1,000 cash over $1,000 bond. Defendant could not make bail, and a hearing was scheduled for March 17, 2006, for the People to convert the complaint to an information or to have defendant released on his own recognizance pursuant to section 170.70 of the CPL.
Defendant suffers from bipolar disorder, and during his time in jail waiting for the hearing he was not permitted to take his medications. At the morning session of court, defendant displayed aggressive and abusive behavior. At the request of his Legal Aid attorney, the matter was adjourned to the afternoon session so that defendant could be evaluated by the Director of the Mentally 111 and Chemical Abuse (MICA) project of the Legal Aid Society, as well as by a senior Legal Aid counsel.
During the lunch break, defendant spoke to the Legal Aid representatives. Defendant indicated that he understood the nature of the proceedings, but also stated that he did not believe in the ability of any court to judge his actions. Further, he continued to display an aggressive behavior, and after the interview attempted to commit suicide.
When court reconvened, both the Assistant District Attorney and the Legal Aid counsel requested that defendant be sent to a mental institution for evaluation and assistance, and defense counsel requested that the charges be dismissed, to which the People agreed. As a consequence, the court dismissed the charges and ordered defendant admitted to the hospital for immediate observation under section 9.43 of the Mental Hygiene Law. The court decided to prepare this detailed written decision because the issue is one of first impression under Mental Hygiene Law § 9.43.
Section 9.43 of the Mental Hygiene Law states:
“(a) Whenever any court of inferior or general jurisdiction is informed by verified statement that a person is apparently mentally ill and is conducting himself or herself in a manner in which a person who is not mentally ill would be deemed disorderly conduct or which is likely to result in serious harm to himself or herself, such court shall issue a warrant directing that such person be brought before it. If, when said person is brought before the court, it appears to the court, on the basis of evidence presented to it, that such person has or may have a *255 mental illness which is likely to result in serious harm to himself or herself or others, the court shall issue a civil order directing his or her removal to any hospital ... or any comprehensive psychiatric emergency program . . . willing to receive such person for a determination by the director of such hospital or program whether such person should be retained therein pursuant to this section.
“(b) Whenever a person before a court in a criminal action appears to have a mental illness which is likely to result in serious harm to himself or herself or others and the court determines either that the crime has not been committed or that there is not sufficient cause to believe that such a person is guilty thereof, the court may issue a civil order as above provided, and in such cases the criminal action shall terminate.”
In the instant action, the statements under oath of the Director of the MICA project and the two Legal Aid attorneys sufficed as a “verified statement” as mandated above to permit the court to determine the mental condition of defendant. This determination was bolstered by the court’s own observations as well. Consequently, the court decided that the best avenue of approach was to order defendant to be admitted on an emergency basis for immediate observation to the hospital which had been treating defendant in the past and which was familiar with his mental and physical history. The authority to issue such an order is derived from the above-cited sections of the Mental Hygiene Law.
The court also determined, as a predicate to invoking section 9.43 of the Mental Hygiene Law, that section 730.30 of the CPL would be an inapposite alternative. Article 730 of the CPL concerns the mental disease or defect of a defendant that would exclude him or her from standing trial. Under section 730.30 (1) of the CPL,
“[a]t any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, . . . the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.”
Section 730.10 (1) defines an “incapacitated person” as one who “lacks capacity to understand the proceedings against him or to assist in his own defense.”
*256 Defendant in the case at bar did understand the nature of the proceedings against him, as testified to by his own counsel. Therefore, it would have been inappropriate for the court to retain jurisdiction over him for the purposes of a 730.30 examination.
Further, section 9.43 (b) of the Mental Hygiene Law, gives the court the ability to terminate the criminal proceedings. This the court was willing to do with the consent of the People.
The court wishes to note that its actions taken pursuant to section 9.43 of the Mental Hygiene Law are for the purposes of emergency admissions for immediate observation, care and treatment, and do not constitute a civil commitment under section 9.31 of the Mental Hygiene Law, which it could not do constitutionally without a full hearing.